HON. ALBERT H. HORTON, CHIEF JUSTICE.
HON. WILLIAM A. JOHNSTON, } ASSOCIATE JUSTICES.
HON. STEPHEN H. ALLEN,

THE STATE OF KANSAS, *on the relation of John T. Little, Attorney General,* v. NATHANIEL BARNES.

1. CITY — *Mayor — Substantial Acceptance of Office.* A city of the first class provided by ordinance that persons chosen as city officers should, before entering upon the duties of their offices, take and subscribe an oath of office, and give bonds in specified amounts, with two or more sureties, to be approved by the mayor and council, and the approval indorsed thereon by the mayor; and it was further provided, that the neglect or refusal of a person so chosen to qualify by taking the oath and giving bond for 10 days after notice of his election or appointment should be deemed a refusal to accept the office; and another provision required the justification of sureties upon such bonds. B. was elected mayor of the city, and, immediately upon receiving notice of his election, took and subscribed the oath of office, which was administered by the clerk, and indorsed upon an official bond which was then presented. The bond was legal in form, sufficient in amount and as to security, but the sureties thereon had not justified. After this bond was tendered and received, B. was introduced as mayor, and thereafter the city council met and coöperated with him as if his qualification had been complete. There was no formal approval of the bond, however, until more than 10 days after he had assumed the duties of mayor. Eleven days after receiving notice of the election, the bond as first received was approved by the council. After that time action was brought to oust him from the office because he had failed to qualify as the ordinances of the city required, and had, therefore, forfeited his right to the office. *Held,* That there was such a substantial compliance with the requirements of the ordinance by B. that he cannot be deemed to have refused to accept the office.

2. OFFICIAL BOND — *Failure to Approve—No Ouster, When.* A person duly chosen as a city officer, who substantially performs his part with respect to qualification, cannot be defeated nor prevented from holding the office by the mere failure or neglect of the city council to formally approve a sufficient bond tendered by such officer.

3. SURETIES — *Neglect to Justify — Office, not Forfeited.* The justification of sureties is only proof of their sufficiency, and the mere failure of sureties who signed the bond of a mayor to justify is not sufficient to invalidate the bond or work a forfeiture of the office.

## Original Proceeding in Quo Warranto.

THE opinion herein, filed July 8, 1893, contains a sufficient statement of the facts.

*John T. Little,* attorney general, and *True & True,* for plaintiff.

*Rees, Snyder & Hoyt,* and *McGrew & Watson,* for defendant.

The opinion of the court was delivered by

JOHNSTON, J.: This is an original proceeding in the nature of *quo warranto,* brought in the name of the state upon the relation of the attorney general against Nathaniel Barnes, to oust him from the office of mayor of Kansas City. The case was submitted upon the facts pleaded and admitted by the parties, and from them it appears that, prior to the regular city election on April 4, 1893, Thomas F. Hannon was in possession of the office of mayor, and that on that day Barnes was elected as his successor by a majority of more than 1,700 votes. On the Friday following the election the mayor and council of the city canvassed the votes cast, and declared Barnes to have been elected. On the same day he was notified of his election and presented with a certificate duly signed. Immediately following, and on the same day, he took and subscribed to the oath of office provided by law and ordinance, and then and there presented an official bond with three sureties thereon, which was then filed with the clerk of the city.

It is alleged in the answer that the bond with the oath of office indorsed thereon was presented to the mayor and council while in session, that the mayor read the names of the sureties, pronounced the bond good, and handed it to the city clerk for filing.   Subsequently, Hannon introduced Barnes to the council as mayor, and turned over to him everything belonging to the office, since which time he has had the possession and has performed the duties of the office of mayor. When the bond was deposited with the clerk the sureties thereon had not justified, nor was there a formal approval of the bond until the 18th day of April, 1893, when it was approved and the approval indorsed thereon by the clerk.   This proceeding was brought on the 21st day of April, 1893, and the contention is, that as Barnes failed to qualify as the ordinances of the city require, and within 10 days after notice of his election had been given to him, he has forfeited his right to the office.

In the thirty-ninth subdivision of ¶ 555 of the General Statutes of 1889, the mayor and council are authorized to "require from all officers and agents bonds and security for the faithful performance of their duties, and to take and subscribe an oath of office;" and in ¶ 636 provision is made for a canvass of the votes after a city election, and that a neglect of an officer to qualify within 10 days after notice of his election shall be deemed a refusal to accept.   An ordinance was adopted by the city providing that elective and appointive officers shall, before entering upon the duties of their offices, take and subscribe an oath of office and give a bond.   It further provides that the mayor shall give bond in the sum of $3,000, with two or more sureties, to be approved by the mayor and council, and the approval indorsed thereon by the mayor.   Another provision of the ordinance was, that the neglect or refusal of a person elected or appointed to any office to qualify by taking the oath and giving bond for 10 days after notice of his election or appointment should be deemed a refusal to accept the office; and there was also the further

provision that bondsmen should qualify before some officer authorized to administer oaths, and the qualification should be attached to the bond.

The decision of the questions so well and elaborately argued, as to whether the provisions respecting the qualification of a city officer are mandatory or directory, and whether a noncompliance, *ipso facto*, works a forfeiture, or only constitutes grounds of forfeiture which may be waived, are not necessary to a disposition of this case. It is clear that there was such

City—mayor—substantial acceptance of office.

a substantial compliance with the requirements of the ordinance by Barnes that he cannot be deemed to have declined or refused the office to which he was elected. Nothing less than a substantial defect should be allowed to overthrow an election about the validity of which there is no question. Barnes was elected by an overwhelming majority, and the vote was canvassed at the proper time, on April 7, when his election was declared. He was present at the meeting of the council, and then received notice of his election. He at once took and subscribed the oath of office, which was administered to him by the clerk, and was indorsed upon a bond which was then presented. The bond was legal in form, correct in amount, and ample as to security. The character of the bond given was well understood. It was received, and thereupon Barnes was introduced as the mayor of the city and immediately entered upon the performance of his duties. Since that time the council has met with Barnes as the mayor and as if his qualification had been complete, and several meetings were held within 10 days after he came into the possession of the office. It is true there was no formal approval of his official bond until the 18th of April, 11 days after he had assumed the duties of mayor; but under the circumstances we regard that to be immaterial. A person duly chosen as an officer who substantially performs his part can-

2. Official bond—failure to approve—no ouster, when.

not be defeated nor prevented from holding the office by the failure or neglect of council to formally approve the bond tendered. The bond was received without objection, and was treated as though it

44—51 KAS.

was sufficient. It is true the sureties who signed the same had not justified when it was presented, but justification is only proof of the sufficiency of the sureties, and it is conceded that the mere failure of sureties to justify is not sufficient to work a forfeiture of the office.

3. Sureties, neglect to justify—office, not forfeited.

The bond first tendered was the one which was received and subsequently approved. No change was made in the form, nor any sureties added, nor was there any alteration whatever after it was deposited with the city, except to attach the justification of the sureties. No objection was made on account of the lack of justification, nor that the sureties were insufficient, and all parties concerned proceeded as if the bond was sufficient and the qualification complete. Under these facts and circumstances, we think the defendant is entitled to his office, and judgment must therefore go in his favor.

All the Justices concurring.